## OPPORTUNITY TO KNOW DISTINGUISHED FROM CONSTRUCTIVE KNOWLEDGE.

Circuit Court of Cuyahoga County.

THE INTERSTATE STEAMSHIP COMPANY v. JOSEPH CHANFORDI.

Decided, November 30, 1908.

*Negligence—Opportunity to Know Not Equivalent of Knowledge—Error to Charge as to Truth of Facts Not Admitted.*

1. In an action for injuries caused by defendants' negligence in which it is alleged that defendants' neglect occurred after they had knowledge of plaintiff's position, it is error to charge that defendants are liable if they knew or had opportunity to know of plaintiff's presence and proximity.
2. It is error to charge the jury that any given fact in issue has been proved, even though the oral testimony in support of that fact is wholly uncontradicted, unless it amounts to an admission by the opposite party.

*Goulder, Holding & Masten,* for plaintiff in error.
—— *Fitzgerald and George B. Marty,* contra.

HENRY, J.; WINCH, J., and MARVIN, J., concur.

The parties to this proceeding in error stand in the relation opposite to that in which they stood in the court of common pleas. There, the plaintiff, Chanfordi, recovered a verdict and judgment for injuries sustained by him through the negligence of the defendant, while he was in the employ of the Pittsburg & Lake Erie Dock Company, at Fairport Harbor, Ohio, May 20, 1906.

The plaintiff's petition alleges that while he was engaged in making repairs upon a certain ore loading machine known as a whirley, and was standing on the dock between said machine and the steamer, B. F. Jones, owned by the plaintiff in error, the agents and servants of the defendant in charge of said steamship "with full knowledge of the presence and position of the plaintiff, undertook to move said steamer along the dock," by making fast a cable to a cleat on the dock and winding the

same on a drum operated by a deck engine on said steamship. He further says that they so carelessly and negligently handled said steamship, her deck engine and cables, that a cable leading from the steamer on the port or left hand side forward, to a cleat on the dock below, where plaintiff was at work, suddenly and without any warning whipped or flew up and struck plaintiff violently on the body and head, painfully and permanently injuring him, without any fault or negligence on his part.

The answer admits, among other things, "that on the day aforesaid, as its said steamer was being moved along said dock, a person to defendant unknown was between one of said unloading machines and said steamer, and was struck by one of said cables." The answer further denies any negligence on its part, but alleges that said injury was caused wholly by the negligence of the person injured.

Upon the trial, and as appears from the bill of exceptions, "in the statement of the case, the defendant's counsel said that the defendant's agents and servants handled the line in the usual and ordinary way," and that "the plaintiff through his own negligence was struck by the line whipping up."

The only evidence offered at the trial was that produced by the defendant in error, and it tends to show that the plaintiff below with four other men, were engaged on this occasion in removing part of the steel framework of the whirley on the side of the machine which was nearest the face of the dock. The work consisted in cutting off and driving out the rivets which held a part of the framework in place, and taking the same out and replacing it with a new part, marking holes in the new one and then having it drilled to fit into the place of the old one. When the work had progressed so far that the rivets had been cut off and driven out and they were about to remove the old frame, the steamer B. F. Jones which had been lying some distance below or south of the machine, was moved down stream along the dock, so that that part of her which was just aft of the forward house was abreast of the whirley, which was being repaired. In pulling on the line to haul the vessel astern, in the manner alleged in the petition, it was obviously dangerous for the men to work in close proximity to the cable, and recognizing this

danger, they stood aside for some minutes. Thereupon, apparently supposing (whether with or without reason, is a controverted point), that they could return in safety, they went back and took out the old beam, carried it to a point south of the whirley and were again returning to clean the grease and dirt off the castings at each corner of the machine so that the new beam could be placed in position and marked, when the cable which had been taut, suddenly slackened and then whipped up, causing the injury to plaintiff.

A motion to direct a verdict for the defendant below having been overruled and no further evidence being offered, the trial judge charged the jury, among other things that:

"If you find that the plaintiff was engaged upon repairing a machine on the dock in close proximity to the defendant's steamer and in a position where he would be likely to receive injuries, if the cable or hawsers of said steamer were suddenly relieved of tension or slackened, and then quickly drawn taut, and the defendant's agents and servants in charge of said steamer had knowledge or had opportunity to know of the plaintiff's presence and proximity to said line, then it was the duty of the defendant to exercise such skill, care and precaution to prevent injury to the plaintiff as would be exercised by an ordinary prudent person under like or similar circumstances, and the defendant had not the right to handle said line in such manner as might suit its convenience regardless of the presence of the plaintiff."

This proposition was charged in pursuance of plaintiff's request number one, and defendant excepted thereto.

We think the exception is well taken in respect of the phrase "or had opportunity to know" of the plaintiff's presence or proximity to said line. This phrase is objectionable for two reasons: First, because no issue of constructive knowledge is presented by the pleadings, the allegation of the petition being, as already stated, that the defendant had "full knowledge of the presence and position of plaintiff." Nor does the evidence so clearly disclose constructive knowledge on the part of the defendant at the moment of the injury to plaintiff as to warrant its being imported into the case by the charge of the court,

upon the theory of an immaterial variance, within the meaning of Section 5295, Revised Statutes of Ohio.

Secondly, even if the issue of constructive knowledge were presented by the pleadings, or clearly made in the ecvidence, it is not properly stated in the charge. "Opportunity to know" is not necessarily equivalent, under the circumstances of this case, to knowledge which the defendant, by the exercise of ordinary care, would have had. On the contrary, the jury might well have inferred from the language of the charge, as given, that the defendant, though without actual knowledge, would be chargeable with constructive knowledge, if it could have found out by the exercise of extraordinary care and diligence, though it would not have known by the exercise of merely ordinary care, that plaintiff was in a situation of danger from the handling of the line.

Error is further alleged of the charge regarding matters of fact as to which the court said, that there was no controversy in the evidence.

This statement of the court was literally true, for the defendant produced no evidence whatever, and there was no inconsistency in these respects in the testimony of plaintiff's witnesses; but the case is otherwise when the court charged upon the subject of damages:

"If you find for the plaintiff in the issue of fact joined here under the court's instructions, you will assess to him such damages as you, in your judgment, believe him to be entitled to under the evidence in this case for his injuries, loss of his teeth, there being no controversy in the evidence that as a result of his being struck by the cable he lost three teeth, and injury to his head, neck—whatever you find to be his injuries from the evidence, give to him such a sum as would fairly and reasonably compensate him for the injury received and the pain he suffered, I say to you that there is nothing to be allowed in the way of compensation for any permanent injury in this case other than that of the loss of the teeth, by the pleading filed by the plaintiff in this case."

This was practically a binding instruction upon the jury that in case they found for the plaintiff, the loss of his teeth was an injury, a permanent injury, and as such, an element of damage recoverable by him.

Under the law in this state, the jury is the sole judge of the credibility of witnesses, and it is not proper for the court to instruct that any given fact in issue has been proved, even though the oral testimony in support of that fact is wholly uncontradicted, unless it amounts to an admission by the opposite party. No such admission appears in the record in this behalf, and the charge in question was clearly erroneous.

Upon the whole evidence the plaintiff in error urges that there is no negligence disclosed on the part of the defendant and that there is negligence on the plaintiff's part clearly shown by the weight of the evidence. We are not prepared to endorse either of these contentions, and we rest our reversal of the judgment below upon the two errors in the charge already pointed out.